**Conrad S. CARUSO, Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL & CO., Defendant.**

**No. 86 Civ. 3408 (RPP).**

United States District Court, S.D. New York.

June 7, 1991.

See also 717 F.Supp. 218.

---

Vladeck, Waldman, Elias & Engelhard, New York City by Joseph J. Garcia, for plaintiff.

Cahill Gordon & Reindel, New York City by Thomas J. Kavaler, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action alleging age discrimination and retaliatory discharge in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing plaintiff's age discrimination claim in Count 1 of the amended complaint. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

KPMG Peat Marwick ("Peat Marwick"), formerly Peat, Marwick, Mitchell & Co., is a public accounting and consulting firm employing thousands of professionals, approximately 1350 of whom are partners or principals. Caruso Aff. filed Feb. 13, 1989 ¶ 6. In May 1969, at the relatively older age of 34, Conrad Caruso ("Caruso") joined Peat Marwick as a Senior Consultant in the Management Consulting Department of Peat Marwick's New York office. *Id.* ¶ 2. In 1970, Caruso was promoted to the position of manager and began to develop a practice in the field of government contracts. *Id.*

Caruso was under the direct supervision of the Partner-in-Charge ("PIC") of the New York Management Consulting Department, who from July 1978 was Russell Peppet ("Peppet"). Peppet Aff. ¶ 2. Peppet promoted Caruso's candidacy for election to the Peat Marwick partnership.[1] *Id.* ¶ 5. The department nominated Caruso in the fall of 1979 and Caruso was elected the partnership in the spring of 1980. *Id.*

In 1981 William Hasler ("Hasler") replaced Peppet as Partner-in-Charge, a position Hasler held until the fall of 1984. Hasler Aff. ¶ 1. In the course of acquainting himself with the partners in the department, Hasler states he found Caruso to have among the lowest performance levels in the department. *Id.* Partner performance at Peat Marwick is measured by two figures, "accountancy income" and "chargeability." "Accountancy income" is the amount of fees billed to clients for engagements generated by and managed by a particular partner. *Id.* ¶ 5 n. 5. "Chargeability" is the percentage of an individual's available time—normally 2080 hours per year—which is billed to clients. *Id.* ¶ 3 n. 4. After two to three years, partners at Peat Marwick were expected to generate $800,000 in accountancy income and achieve 40–60% chargeability. *Id.* ¶ 3; Montgomery Aff. ¶ 4.

In June 1983, when Caruso had been a partner for three years, Hasler conducted Caruso's annual performance review and expressed concern about Caruso's performance. Caruso's 1983 Performance Evaluation shows that his accountancy income for the preceding year was $300,000 with 34% chargeability, short of the firm's goal for him of $600,000 in accountancy income and 45% chargeability set during the preceding year's review. Hasler Aff. ¶ 5 & Exh. B. For 1984 Caruso and Hasler set a goal of $750,000 in accountancy income and 45% chargeability for Caruso. *Id.* In a separate evaluation form not shown to Caruso, Hasler ranked Caruso 27th out of 29 part-

---

**1.** Caruso had been proposed for nomination for election to the partnership twice before—in 1977 and 1978—but was not nominated. Peppet Aff. ¶¶ 3–4.

ners and principals in the Management Consulting Department. *Id.* ¶ 6.

In February 1984 Caruso began appearing on "watch lists" identifying persons being tracked by the Operating Committee whose resignations were likely to be sought if their performance failed to improve. Hasler Aff. ¶ 10; Peppet Aff. ¶ 7. One such list dated February 20, 1984 entitled "Sub–Standard and Marginally–Performing Partners" and addressed to members of Peat Marwick's Operating Committee lists Caruso as one of nine such partners in the Northeast Region. Hasler Aff., Exh. D. A second undated watch list appears in the record entitled "Counseling of Partners" and lists Caruso under the heading "Sub–Standard." *Id.*

█ In May 1984, Hasler ·conducted Caruso's 1984 Performance Evaluation. Far from meeting the goal of $750,000 set the previous June, Caruso had achieved accountancy income of less than $400,000 in the preceding year.[2] Hasler Aff. ¶ 7. Hasler made plans to conduct a mid-year review with Caruso in December 1984. *Id.* Hasler claims that mid-year reviews are "extremely rare" at Peat Marwick and that he. intended to seek Caruso's resignation after the mid-year review if his performance did not substantially improve. *Id.* ¶ 8. In the confidential portion of the Evaluation, Hasler ranked Caruso 29th out of 31 partners and principals in the department but noted:

> [Caruso] did respond to last year's counseling by attempting to diversify his government contracting practice into defense industries with some success.... This momentum, plus his continued professionalism and dedication, offers some potential for improved success in FY 85.

*Id.*, Exh. G at 5. Hasler gave Caruso an overall rating and a rating for Practice Development of "A" or "Needs Improvement," a rating which calls for "constructive counseling." *Id.* at 6; Garcia Aff., Exh. D.

Caruso's December 1984 mid-year review did not take place because in October 1984 John Montgomery ("Montgomery") replaced Hasler as Partner-in-Charge of the New York Management Consulting Department. Montgomery Aff. ¶ 1. Montgomery states that as the new PIC, he "was not prepared to seek Mr. Caruso's resignation immediately." *Id.* ¶ 5. He states he was however prepared to do so after conducting Caruso's 1985 Performance Evaluation in May or June of 1985 if Caruso's performance failed to show substantial improvement. *Id.* Caruso alleges that Montgomery did not counsel him about his performance at any time. Caruso Aff. ¶ 5.

In October 1984, the Board of Directors of Peat Marwick proposed an Enhanced Early Retirement Program ("EERP") designed to reduce the total number of units in the partnership through a program whose terms would "encourage the early retirement of a number of partners whose contribution to the Firm had leveled off." Hasler Aff., Exh. E. William Mecklenburg, a member of the Operating Committee, testified at his deposition that the program was more broadly aimed at "partners who were getting up in years who were tired, whose contribution to the partnership was not what it had previously been commensurate with their earning capacity." Garcia Aff., Exh. N at 15.

Pursuant to the board's proposal, Peat Marwick's Operating Committee formulated eligibility requirements for participation in the EERP by partners whose performance was less than satisfactory and who might be asked to resign. Category 1 of the EERP comprised partners who, as of June 1985, were at least 49 years old and whose combined age and years of service equalled at least 72. Certain partners in this category would be asked to resign, others would be encouraged but not forced to resign and still. others would not be encouraged to resign under the program.

---

2. Caruso claims that the income and chargeability figures reported in his 1983 and 1984 Performance Evaluations are inaccurate and do not reflect his true contributions to the firm because certain fees he generated were either un- derreported or were not credited to him. Caruso Aff. filed January 14, 1991 ¶ 3. Because Caruso failed to challenge the figures at the time of the performance evaluations, his objections are deemed waived for purposes of this motion.

Category 2 of the EERP comprised partners who had at least 10 years of service at Peat Marwick and whose combined age and years of service totalled at least 63. Partners in Category 2 were the partners who met the age and service requirements and whose poor performance was such that they would be asked to take early retirement. Partners retiring from either Category 1 or 2 would be entitled to receive substantial payments in excess of their entitlement under Peat Marwick's existing retirement plan.

The Operating Committee also compiled a list of "marginally performing partners subject to a continuing review of their performance" whose names were not listed in Categories 1 and 2. *See* Letter from Plaintiff's Counsel to the Court dated Mar. 13, 1991, Exh. A. Such partners, generally newer and younger partners, might be asked to resign but unlike partners in the Enhanced Early Retirement Program, were not entitled to receive additional or enhanced benefits upon termination.[3] According to Mecklenburg, the marginally performing partners were to receive counseling regarding their performance prior to being asked to resign. Garcia Aff., Exh. Z at 59.

The Regional Vice–Chairmen were responsible for identifying candidates for the EERP for his or her respective region. Caruso was originally listed as a marginally performing partner not qualified for enhanced benefits under the EERP upon termination.[4] Hasler Aff., Exh. G. Thereafter, however, Caruso was listed in Category 2 of the EERP because the Operating Committee noticed that he met the combined age and years of service requirement of 63. *Id.*, Exh. H & I.

On February 22, 1985, prior to his 1985 Performance Evaluation scheduled for June, Montgomery asked Caruso to resign under Category 2 of the EERP. Montgomery Aff. ¶ 6. Peat Marwick claims Caruso resigned voluntarily but has assumed for purposes of this motion that Caruso was "discharged," one of the elements required to state a claim for relief under the ADEA. Memorandum of Law in Support of KPMG Peat Marwick's Motion for Partial Summary Judgment (hereinafter "Def. Mem. in Supp.") at 28 & 29 n. 15. When his employment terminated on December 12, 1985, Caruso was 50 years old. The gist of plaintiff's age discrimination claim is that the younger partners on the list of marginally performing partners were given the continued opportunity to maintain their employment and improve their performance while older partners asked to resign under Categories 1 and 2 of the EERP were not.[5]

## DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The evidentiary framework applicable to Title VII cases [6] also governs age

---

3. At various points in the record and in certain internal Peat Marwick documents, the group of marginally performing partners entitled to counseling are designated as "Category 3" of the EERP, but because they were not entitled to enhanced benefits upon termination, the marginally performing partners cannot in any meaningful sense be deemed a "category" of the Enhanced Early Retirement Program. The Court declines to treat them as such.

4. The record does not disclose when this occurred.

5. Indeed one younger partner in this group remained with the firm until December 1989. Hasler Aff., Exh. J.

6. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

discrimination claims under the ADEA. *See Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989). Plaintiff must first demonstrate by a preponderance of the evidence a prima facie case of age discrimination, consisting of proof that he was a member of the protected class,[7] that he was qualified for the job and that the discharge occurred under circumstances giving rise to an inference of age discrimination. *See Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir. 1983). For purposes of this motion, Peat Marwick assumes plaintiff can meet this initial burden. Def.Mem. in Supp. at 28 & 29 n. 15.

Once plaintiff has established a prima facie case of age discrimination, the burden shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In this case, Peat Marwick justifies its demand for Caruso's resignation based on his failure to achieve the required levels of partner performance, including achieving sufficient accountancy income and chargeability.

■ Once the employer has articulated a nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the explanation offered by the employer is "unworthy of credence," *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981), and is merely a "pretext" for intentional discrimination on the basis of age. In order to show pretext in an age discrimination case, the plaintiff is not required to show that age was the only or even the principal factor in the employer's decision or that the employer's explanation was false. Rather, the plaintiff need only show that the employer's articulated reason was not the only reason and that plaintiff's age made a difference. *See Montana v. First Fed. Sav. & Loan Ass'n of Rochester,* 869 F.2d 100, 105 (2d Cir.1989); *Paolillo v.*

*Dresser Indus., Inc.,* 865 F.2d 37, 40 (2d Cir.1989).

When viewed in the light most favorable to him, Caruso's evidence of pretext is sufficient to defeat summary judgment. Although Peat Marwick argues strenuously that the EERP is a lawful plan under *Public Employees Retirement Sys. of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), an issue the Court declines to reach, there is an issue of fact as to whether age was in fact used as a basis for enforcing poor performance reviews under the EERP, a program admittedly aimed at older "tired" partners. Caruso's 1984 Performance Evaluation shows that he had responded positively to counseling the previous year and that his supervisor recommended continued counseling. Without further evaluation of his performance, however, Caruso's age (added to his years of service) permitted Peat Marwick to remove him from a group of partners who were being offered continued counseling prior to a demand for resignation to a category of the EERP whose members received no counseling prior to such a demand. Under these circumstances, a reasonable jury could conclude that Peat Marwick's performance-based reasons for demanding Caruso's resignation were merely pretextual and that Caruso's age did make a difference in the company's decision to seek his resignation. *See Fuller v. Gannett Co.,* 52 Empl.Prac.Dec. (CCH) ¶ 39,591, 1989 WL 146761 (S.D.N.Y. Nov. 28, 1989) (summary judgment denied where jury could conclude that plaintiff's continued outbursts after employer failed to discipline him according to its stated policies were a pretext for discharging him). Accordingly, defendant's motion for summary judgment dismissing Count 1 of the complaint is denied.

Counsel are notified that the pretrial order is due Monday, July 1, 1991. All counsel are to attend a final trial conference on

---

7. Under the ADEA, the protected class comprises persons over 40 years of age. 29 U.S.C. § 631(a).

Wednesday, July 10, 1991 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.

