Cynthia PETERSON, Plaintiff,

v.

The CITY COLLEGE OF THE CITY UNIVERSITY OF NEW YORK and The City University of New York, Defendants.

No. 92 Civ. 7952 (RPP).

United States District Court,
S.D. New York.

Nov. 16, 1994.

Anthony Feldmesser, New York City, for plaintiff.

New York State Department of Law by Martha O. Shoemaker, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This action was filed *pro se* in late 1992. In 1994, Plaintiff obtained counsel, and a verified amended complaint (Amended Complaint) was filed on March 21, 1994 alleging age and gender discrimination, harassment and retaliation during employment, in various arrangements, in denial of tenure and termination of employment due to a continuing pattern and practice of discrimination by Defendants. The action is brought pursuant to Title VII, 42 U.S.C. 2000e *et seq.* and Section 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. 626(b) as amended.

Plaintiff moves to compel production of documents requested by Plaintiff on April 12, 1994 pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. Defendants responded on June 25, 1994. At that time, Plaintiff's counsel attempted to proceed pursuant to Local Rule 3(b), but Defendant's counsel was unavailable until mid-August. On September 2, 1994, this Motion to Compel was filed.

██ Defendants answer to Request No. 4 by attempting to limit its response to the period in which Plaintiff was denied tenure and terminated. In view of the allegations of a continuing pattern and practice of discrimination as set forth in Plaintiff's Amended Complaint, this response is insufficient.

In *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), the Second Circuit found that plaintiff's proof of repeated acts of abusive behavior by male staff members and supervisors constituted a continuing violation. It held that "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to

continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704. Since Plaintiff has alleged in her complaint a continuing pattern and practice of discrimination, she should be allowed discovery of Request No. 4 to see if there is proof of such specific ongoing discriminatory policies or practices.

■ Plaintiff seeks documents concerning the procedures used by Defendants in evaluating faculty, teachers and researchers, positions Plaintiff occupied or applied for during her employment (Request No. 4), as well as any documents reflecting the legal requirements for recruiting, hiring and placement (Request No. 5). Both requests may lead to discoverable evidence. *Cf. Melarkey v. Texaco,* 983 F.2d 1204, 1210–11 (2d Cir.1993); *Hollander v. American Cyanamid Co.,* 895 F.2d 80 (2d Cir.1990). Defendants suggest that its response to Request No. 4 is complete dating back to 1958, 1967, and 1975 (*see* Def. Mem. at 8). If so, it is to respond to that effect.

■ Request No. 6 is aimed at proving differential treatment of women and people in Plaintiff's age group in terms of fringe benefits by assignment of scholarships, travel, lecture and special projects and is clearly relevant to Plaintiff's Amended Complaint. On initial discovery, the Court will not prevent Plaintiff from proving her case either as disparate treatment or by a disparate impact theory.

■ Request No. 9 seeks documents concerning Defendants' policies for salary levels and records. This also is clearly relevant evidence of Plaintiff's performance and may be evidence of discrimination.

■ Request Nos. 10 and 11 seek documents of internal complaints of gender or age discrimination filed against Defendants. Although such complaints may not be used as evidence at trial, such documents may lead to discoverable evidence or allow Plaintiff to present a statistical base if one expects to permit any inference that gender or age was a determinative fact in decisions relating to employment decisions concerning the Plaintiff. *See Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984).

■ Request No. 12 is for documents concerning hiring or discharge by Defendants of persons over 50 years of age, including any affirmative action policies. Any formal, general personnel policies of the Defendants for the period in which Plaintiff was employed by the Defendants and immediately afterward are clearly relevant and subject to discovery.

■ Request Nos. 14 and 16 relate to Plaintiff's applications to engage in academic activities sponsored by Defendants and documents reflecting Defendants' responses thereto. These are relevant to Defendants' various evaluations of Plaintiff *cf. Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176 (2d Cir.1992); *Caruso v. Peat, Marwick, Mitchell and Co.,* 765 F.Supp. 144 (S.D.N.Y.1991), and may be relevant to the fairness of the standards utilized by Defendants in denying her tenure.

■ Request No. 18 and 19 are clearly addressed to Plaintiff's claims that she was replaced in the position from which she was terminated by younger persons and males with less experience. Such information is clearly relevant but may only be used for purposes of this allegation and not for other purposes.

■ Request No. 20 relates to documents containing statements about Plaintiff's claims of discrimination and her termination and is ordered produced.

Request No. 23 is incomprehensible and denied.

■ Request Nos. 24, 25, and 26 are granted in that they will prove relevant to Plaintiff's claims of discrimination if they show a pattern of preferential treatment of males or younger persons. Defendants argue that files of other male or younger faculty members who were granted tenure are not discoverable for two reasons: (1) comparative evidence from the files of other faculty members has been excluded as irrelevant in denial of academic tenure cases; and (2) such files are not discoverable as they are protected by a deliberative process privilege.

Defendants cite *Lieberman v. Gant*, 630 F.2d 60 (2d Cir.1980) to support their position that comparative evidence from the files of other faculty members has been excluded as irrelevant in denial of academic tenure cases. However, *Lieberman* found the "bulky folders of male professors irrelevant because none provided a complete comparison between the complainant and those granted tenure. The trial court's ruling was further sustained as a proper exercise of its discretion *in that case*—it did not state as a matter of law that comparative proof is inadmissible in Title VII cases." *Gibson v. American Broadcasting Companies, Inc.*, 892 F.2d 1128, 1133 (2d Cir.1989) (emphasis added). In fact, in *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the Supreme Court affirmed a district court order to enforce a subpoena seeking an individual's tenure review file as well as the tenure files of five male faculty members who had allegedly received more favorable treatment.

*University of Pennsylvania v. E.E.O.C.* also speaks directly to the question of whether the files of Professors Oschorn, Feigenberg, and Hermanuz are protected by a deliberative process privilege in the case at hand. In *University of Pennsylvania*, the University denied tenure to Rosalie Tung, an associate professor. Tung then filed a sworn charge of discrimination with the EEOC. In her charge, Tung stated that she had been sexually harassed by the department chairman and she believed he had submitted a negative letter to the University's Personnel Committee which possessed ultimate responsibility for tenure decisions. She alleged that her qualifications were "equal to or better than" those of five named male faculty members who had received more favorable treatment. The EEOC undertook an investigation into Tung's charge and ultimately issued a subpoena seeking Tung's tenure-review file and the tenure files of the five male faculty members identified in the charge. The Supreme Court specifically denied the University a claim of privilege to protect the integrity of the peer review process, and held that once there is a showing of relevance, peer review materials pertinent to charges of discrimination in tenure decisions were to be disclosed. *University of Pennsylvania* 493 U.S. at 189–95, 110 S.Ct. at 582–85.

The Court specifically found "that the adoption of a requirement that the [EEOC] demonstrate a 'specific reason for disclosure' ... beyond a showing of relevance, would place a substantial litigation-producing obstacle in the way of the Commission's efforts to investigate and remedy alleged discrimination." *Id.* at 194, 110 S.Ct. at 584. In light of the Supreme Court's decision in *University of Pennsylvania*, Request Nos. 24, 25, and 26 are ordered to be produced.

Although Defendants cite Magistrate Judge Katz's decision in *Torres v. City University, et al.*, No. 90–2278, 1994 WL 502621 (S.D.N.Y. Sept. 14, 1994), this decision is distinguishable from the case at hand. In *Torres*, Magistrate Judge Katz originally granted a request for discovery of administrative personnel files and personnel files of other professors but was ordered by Judge Preska to reconsider "in light of the Second Circuit's assertion that disclosure may not be necessary where an explanation, such as failure to meet *publication requirements*, is given to plaintiff by the school as a reason for denial of tenure. *Gray v. Board of Higher Educ.*, 692 F.2d 901 (2d Cir.1982)." *Torres* at 2. In so doing, Judge Katz reasoned that defendants' proffered explanation for their conduct was concrete and subject to challenge on the basis of evidence presently available to plaintiff, and therefore the peer review reports for other tenure decisions were not discoverable.

This is not true in the matter at hand. Although lack of publication was one reason cited by President Harleston for Peterson's denial of reappointment with tenure, it was only one of numerous reasons cited including teaching effectiveness, professional accomplishments, and teaching observations by peers (*see* Def. Mem. in Opp., Ex. A). The criteria set forth in the Harleston letter is not as objective nor is it as easily refuted as the criteria used by City University in *Torres*, i.e., lack of original publication. Judge Katz specifically highlighted how Defendant Torres might show that City University's actions were pretextual: "Plaintiff can secure access to his former colleagues' publications;

they are, after all within the public domain." *Torres* at 7. In this case, the criteria used by City University is not as easily assessed nor is it as easily accessed. Accordingly, Defendant Peterson should be allowed discovery of Request Nos. 24, 25, and 26 since Defendants' proffered explanation for their conduct is not concrete nor is it subject to challenge on the basis of evidence presently available to Plaintiff.

Accordingly, Plaintiff's Motion to Compel Production of Documents is granted with respect to Request Nos. 4, 5, 6, 9, 10, 11, 12, 14, 16, 18, 19, 20, 24, 25, and 26. Plaintiff's Motion to Compel Production of Documents with respect to Request No. 23 is denied.

IT IS SO ORDERED.