892 F.2d 1128
 54 Fair Empl.Prac.Cas. (BNA) 1435,
52 Empl. Prac. Dec. P 39,546
David Leslie GIBSON, Ronald O. Hope, and Angelo Rios,
Plaintiffs-Appellants,
v.
AMERICAN BROADCASTING COMPANIES, INC., Robert Benson, Vice
President, News & Sports, ABC Radio Network: Peter
Flannery, General Manager of News Programming, ABC News
Network; Richard Dressel, Domestic Assignments Manager, ABC
Radio News Network; and Jeffrey Sprung, News Director, FM
Radio News Network of American Broadcasting, Inc.,
Defendants-Appellees.
 No. 22, Docket 89-7286.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 10, 1989.
Decided Dec. 22, 1989.
 
 Warner J. Bennia, New York City, for plaintiffs-appellants.
 Philip M. Berkowitz, New York City (Rhonda J. Moll, Epstein Becker & Green, P.C., New York City, of counsel), for defendants-appellees.
 Before FEINBERG and CARDAMONE, Circuit Judges, and METZNER, District Judge.*
 CARDAMONE, Circuit Judge:
 
 
 1
 On this appeal from judgments summarily dismissing appellants' complaints alleging discrimination in employment, the employer questions whether proof comparing appellants' performance with that of other employees is admissible. The old adage that comparisons are odious, because so often they are not pertinent--making one thing a standard for another which has no relation to it--is no less true today. Nevertheless, as a form of proof in an employment discrimination case, we think relevant comparisons are properly considered.
 
 BACKGROUND
 
 2
 The parties to this appeal are David L. Gibson, Ronald O. Hope and Angelo Rios (plaintiffs or appellants) who brought suit against their employer American Broadcasting Companies, Inc. and four of its supervisory officials--defendants Robert Benson, Peter Flannery, Richard Dressel and Jeffrey Sprung (collectively ABC or ABC Radio News), for claimed employment discrimination. The instant action was instituted by plaintiffs in the United States District Court for the Southern District of New York (Daronco, J.) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. (McKinney 1982 & Supp.1989). Plaintiffs assert that defendants discriminated against them in the terms and conditions of their employment on the basis of their race, color, or national origin.
 
 
 3
 Gibson, a correspondent for ABC Radio News since 1976, asserts that he was consistently denied regularly scheduled weekends off because he is black. Hope, a newswriter with ABC Radio News also since 1976, alleges that his assignment to editorial duties was unfairly delayed because he is black. Rios, a former desk assistant with ABC Radio News from 1976 to 1985, claims he was wrongfully denied a newswriter job because he is Hispanic.
 
 
 4
 On May 4, 1988 Judge Richard Daronco granted summary judgment in favor of ABC on the claims of Gibson and Hope, Gibson v. American Broadcasting Companies, Inc., 687 F.Supp. 786 (S.D.N.Y.1988), but denied ABC's motion for summary judgment in Rios' case. Due to the unfortunate death of Judge Daronco, the matter was reassigned to Southern District Judge Robert W. Sweet who, on November 14, 1988, denied Gibson's and Hope's motions for reconsideration of Judge Daronco's decision. Gibson v. American Broadcasting Companies, Inc., 700 F.Supp. 707 (S.D.N.Y.1988). Judge Sweet conducted a non-jury trial with respect to Rios' claims that began on February 3, 1989. After a four-day trial, the district judge rendered a decision from the bench on February 9, 1989 dismissing Rios' complaint. Gibson, Hope and Rios subsequently filed this joint appeal.
 
 DISCUSSION
 
 5
 I Law Applicable to Gibson's and Hope's Claims
 
 
 6
 Before discussing the merits of Gibson's and Hope's claims of discrimination, it is necessary to set forth the legal principles applicable to establishing a cause of action for employment discrimination; and, next, because plaintiffs' complaints were dismissed on motions for summary judgment, to examine the proper use of summary judgment in this sort of case.
 
 
 7
 A. Cause of Action for Employment Discrimination
 
 
 8
 To prove that ABC discriminated in its employment decisions affecting them, Gibson and Hope first were required to prove a prima facie case. A prima facie case is established when a plaintiff shows that: (1) he or she is a member of a statutorily protected class; (2) he or she is qualified for the position applied for; (3) the employer denied plaintiff the job sought; and (4) after such denial the employer continued to seek applicants for the position with qualifications similar to plaintiff's. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If plaintiff succeeds in establishing a prima facie case the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for turning plaintiff down. Assuming defendant gives a valid reason, plaintiff then must show by a preponderance of the evidence that defendant's articulated reason was pretextual. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).
 
 
 9
 In the instant case both plaintiffs are black and as such are members of a racial minority statutorily protected. Gibson applied to be scheduled weekends off; Hope applied for acting editor assignments. They assert in their complaints that they were qualified for these employment opportunities which were denied them. Subsequent to plaintiffs' requests, other ABC Radio News employees with similar qualifications obtained the assignments Gibson and Hope unsuccessfully sought.
 
 
 10
 Judge Daronco ruled that even assuming that Gibson and Hope had proved a prima facie case of disparate treatment, they had presented no evidence that ABC's reasons for its employment decisions were pretextual. See 687 F.Supp. at 793. Because of the procedural posture of this case--dismissal on a summary judgment motion--we review the allegations de novo drawing all inferences in appellants' favor because they are the nonmoving parties. See Burtnieks v. City of New York, 716 F.2d 982, 985-86 (2d Cir.1983). In reviewing whether plaintiffs initially stated a prima facie case, we assume that the allegations contained in the plaintiff's respective complaints regarding their qualifications for the positions they sought are true. Thus, we are persuaded that these appellants made out a prima facie case.
 
 
 11
 It also seems clear that ABC Radio News articulated a legitimate nondiscriminatory reason for management's decision in each case, namely, that neither Gibson or Hope were qualified for the positions they sought. After the employer has given a legitimate reason, for purposes of determining whether ABC's reasons were pretextual, it may not be assumed--as it was in determining whether a prima facie case was stated--that appellants' allegations that they were qualified are true. At this stage of the proceedings plaintiffs are held to the burden of proof ultimately needed to prevail at trial, and must submit proof on the issue of pretext by a preponderance of the evidence. There is an exception to this rule on burden of proof. If ABC Radio News' decision is found to be a mixture of legitimate and illegitimate motives, that is to say, one with mixed motives, the employer then has the burden of proof by a preponderance of the evidence that it would have made the same employment decision, absent the discriminatory motive. See Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 1788-89, 1792, 104 L.Ed.2d 268 (1989). Here that proof would require ABC to show that race made no difference in ABC's decisions. On remand, the district court should determine whether with respect to pretext this is a mixed motive case.
 
 B. Summary Judgment
 
 12
 We turn next to the use of summary judgment generally, and in a Title VII case particularly. Summary judgment is a procedural device that may be used effectively to bring meritless litigation quickly to an end. Its application depends upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is not the trial court's function to weigh the evidence and resolve the factual issues, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); rather, its role on such a motion is to determine as a threshold matter whether there are genuine unresolved issues of material fact to be tried. Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.1975). The definition of an unresolved factual issue is one that a reasonable factfinder could decide in favor of either party. See Anderson, 477 U.S. at 250, 106 S.Ct. at 2511. Because granting the motion deprives a party of its day in court and the right to present its cause to a jury, the district court in examining the record must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.
 
 
 13
 The burden of demonstrating the lack of any genuine unresolved issues of fact rests on the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Uncertainty as to the true state of any material fact defeats the motion. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980). If upon examining the record in a light generous to the nonmoving party, a material issue is found to exist, the motion must be denied and the case proceed to trial. See United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor", 691 F.2d 603, 606 (2d Cir.1982).
 
 
 14
 The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue--not merely one that is colorable--of material fact is present. See Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam); Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985), modified on other grounds, 821 F.2d 121, cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).
 
 
 15
 We apply those general guides to the instant case. In order to avoid the speedy end of their claims by summary judgment, it was necessary for Gibson and Hope to show that sufficient evidence existed in the record to support a reasonable finding of discrimination. Such evidence may be established directly by demonstrating that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; see McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1824-25; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464-65 (2d Cir.1989); Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir.1988).
 
 
 16
 In deciding whether Gibson and Hope made such a showing, we must determine whether defendants' purported legitimate business reasons are actually such. Burdine, 450 U.S. at 259, 101 S.Ct. at 1097 (fact that court believes employer misjudged applicant's qualifications does not itself demonstrate discrimination, but misjudgment is probative on whether articulated reason is pretext); Sweeney v. Research Foundation of St. Univ. of N.Y., 711 F.2d 1179, 1185 (2d Cir.1983) (employer's articulated subjective evaluation of qualifications by itself not adequate because it may mask prohibited discrimination); Knight v. Nassau County Civil Service Comm'n, 649 F.2d 157, 161 (2d Cir.1981) (employer may not use wholly subjective and unarticulated standards to judge employee performance).
 
 II Comparative Proof and Appellants' Claims
 
 17
 Before discussing appellants' claims, it is appropriate to consider the admissibility of comparative proof. ABC argues that comparative proof is not appropriate in a Title VII action. Appellants, on the other hand, rely on this kind of evidence to establish pretext with respect to ABC's employment decisions. In Lieberman v. Gant, 630 F.2d 60 (2d Cir.1980), we upheld a trial court's exclusion of the use of comparative evidence as direct evidence at trial. Id. at 67-68. Lieberman was a Title VII discrimination suit brought for denial of academic tenure at a state university allegedly on account of gender. When granted, tenure not only creates a long term commitment, but also involves as a distinct policy consideration, separate from other employment discrimination cases, "an important part of our long tradition of academic freedom." Id. at 67.
 
 
 18
 Significantly, Lieberman also found the bulky folders of male professors irrelevant because none provided a complete comparison between the complainant and those granted tenure. The trial court's ruling was further sustained as a proper exercise of its discretion in that case--it did not state as a matter of law that comparative proof is inadmissible in Title VII cases. Moreover, at trial the comparison folders were allowed to be used for purposes of cross-examining their author. Id. at 68. Thus, Lieberman does not stand for the proposition that comparative proof otherwise relevant is inadmissible in Title VII suits. In light of the strong remedial purposes expressed in the Civil Rights Act of 1964 and the 1972 Amendments to Title VII, where Congress aimed to give courts broad discretion, in the exercise of their equitable powers, to fashion the most complete relief possible for victims of discrimination, see Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1091 (6th Cir.1974) (reciting Legislative History of Title VII Amendments), we could hardly hold that relevant proof was inadmissible. Hence, comparative proof is generally admissible in a Title VII discrimination suit. Because it was necessary to establish both Gibson's and Hope's claims, it was properly considered in their cases, to which we now turn.
 
 A. Hope
 
 19
 Hope began employment with ABC on June 15, 1976 as a vacation relief newswriter after receiving a B.A. from Rutgers University with a major in communications in May 1974. Prior to joining ABC he had worked for several different radio stations. He alleged in his complaint that he had requested an opportunity to become an acting editor for ABC Radio News. When it granted summary judgment, the district court found that Hope was not qualified to receive acting editor assignments any sooner than he did (1050 days from his date of hire), and that he failed to present proof showing that ABC's articulated nondiscriminatory reason was pretextual. We think contrary inferences to those drawn by the district court might be permissible. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).
 
 
 20
 The only evaluative evidence of Hope's qualifications consists of three discrete criticisms in his file. They concern log entries, handling of incoming news and news gathering. All are contemporaneous with the time of deficiency in performance, and do not differ in number, type or nature from similar criticisms found in the files of caucasian newswriters Dauer, Dixon, Schoenholtz and Tague. Each of them was upgraded to acting editor positions a good deal sooner than Hope. Thus, Dixon was upgraded to acting editor 190 days after his date of hire, while Schoenholtz and Tague received favorable employer action within 17 and 38 days respectively. In contrast, Hope was not upgraded until 1050 days after his date of hire. Appellees' response to this comparative proof is that Hope is presently receiving the acting editor assignment he originally sought. But, as appellant points out, he did not receive the increased pay in the past that he claims he was discriminatorily denied.
 
 
 21
 As a consequence, the record contains sufficient evidence to create a genuine issue of material fact on pretext. The granting of summary judgment dismissing Hope's complaint should therefore be reversed and his discrimination claim should proceed to trial.
 
 B. Gibson
 
 22
 Gibson's affidavit details his 11 years as an on-air correspondent for the contemporary network of ABC Radio News. It notes that he is the only black correspondent and asserts that, save for vacation or compensation days, he has never been scheduled off on a Saturday or Sunday. Gibson claims that none of the caucasian correspondents were similarly scheduled for weekend work and that ABC's response that his performance has consistently been the weakest is pretextual. Appellant states that some employees not scheduled for full weekend work have since had their employment terminated, while he has remained an on-air correspondent continuously for 11 years.
 
 
 23
 The focus of Gibson's complaint of discrimination spans a 28-month period from September 1, 1980 to December 31, 1982. On appeal, he offers three ABC employees for comparison: Berman, Snow and Myers. Myers is an inapt comparison because Gibson only points to her job performance in 1983-84, not the 1980-82 time period that is the subject of his claim of discrimination. Ms. Snow's situation is not comparable either because she negotiated a contract with ABC Radio News guaranteeing her Saturdays and Sundays off. Berman, the other comparison employee, was not regularly scheduled for a Saturday or Sunday off from September 1982 until February 1983 (when his employment was terminated). If these comparisons were Gibson's only proof of pretext, appellees' motion for summary judgment would have been properly granted. Cf. Lieberman, 630 F.2d at 67-68.
 
 
 24
 But there are two critical unresolved material facts that we believe require a trial. First, Richard Dressel, the News Manager at ABC Radio News who had hired Gibson and was directly responsible for his schedule, admits that from August 1980 through March 1982 every white contemporary network employee was scheduled off on either a Saturday or Sunday. Only Gibson was not so scheduled. Second, though the reason ABC Radio News gives for this differential treatment was because Gibson was consistently the weakest correspondent, it is conceded that the three recited comparison employees were all fired for incompetency and all were employed during the same time frame when appellant was allegedly the weakest employee. The incompetency argument is also undercut by Gibson's assignment to the afternoon drive shift--the prime radio listening time--for a four-month period in 1980. These circumstances create a material issue of fact regarding whether the reason given for Gibson's discriminatory schedule was pretextual. Accordingly, the grant of summary judgment dismissing Gibson's complaint should be reversed and his case should also proceed to a trial on the merits.
 
 C. Rios' Claim
 
 25
 Unlike the appeals brought by Gibson and Hope, the appeal brought by Angelo Rios is based on findings of fact made by the district court after a trial on the merits.
 
 
 26
 Rios alleged in his complaint that from 1977 to 1981 he requested but was denied a newswriter position because of his Hispanic origin. He also alleges that he was discriminatorily denied--subsequent to an audition given to him during February, 1978--the further opportunity for tape and writing auditions, and that he did not receive training, teaching and direction, similar to that provided to caucasians employed by ABC and applicants from outside ABC who became newswriters. Rios' employment with ABC was terminated in 1985 for insubordination.
 
 
 27
 At trial and on appeal he attempts to show that the reasons given for not employing him as a newswriter were pretextual, and that four other applicants were hired without the previous radio experience he was told was a required qualification for the position.
 
 
 28
 The facts disclosed at the bench trial reveal that appellant worked for ABC Radio News as a desk assistant for nine years commencing in 1976 and ending in 1985. It is ABC's policy to require applicants for newswriter positions to have several years of broadcast journalism experience in a major news market, though, in exceptional cases, individuals were considered for employment if they demonstrated sufficient skill and talent. ABC presented proof concerning the four individuals that Rios claimed were hired without the necessary qualifications. The proof indicated that the four individuals had either greater news experience, or more education (college degrees), or had demonstrated other outstanding attributes. Of the four comparison employees, two were hired on account of outstanding skill and/or talent; one of them was black and the other Hispanic. The evidence therefore presented a question of fact respecting pretext that Judge Sweet decided in favor of ABC Radio News.
 
 
 29
 Under Fed.R.Civ.P. 52(a), a finding of fact may only be set aside if it is clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Judge Sweet's determination that Rios was unqualified to be a newswriter is not clearly erroneous. Rios concedes that he did not have the required five years of major marketing experience, nor was he a college graduate. The evidence of pretext Rios presents is weak since ABC satisfactorily explained why the others with allegedly no greater experience were hired, and two of them were members of a minority. Because we think Judge Sweet's assessment of the credibility of witnesses is plausible looking at the record as a whole, we see no reason to disturb his findings. Hence, we affirm the district court's dismissal after trial of Rios' complaint.
 
 CONCLUSION
 
 30
 The appeal by Rios from a February 9, 1989 order of Judge Sweet is affirmed; the appeals of Gibson and Hope from the May 4, 1988 entry of summary judgment by Judge Daronco in favor of ABC is reversed and the cases are remanded for trials on the merits.
 
 
 
 *
 Hon. Charles M. Metzner, United States District Court for the Southern District of New York, sitting by designation