Dina **FILIPPINI** and Scott Milchman, Plaintiffs,

v.

Walter **BECKWORTH** and United Newspaper Delivery Service, Defendants.

No. CV–90–1256.

United States District Court, E.D. New York.

Oct. 28, 1991.

Richard M. Kass, New York City, for plaintiffs.

David J. Kilkenny, Downing & Mehrtens, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a personal injury action with parties of diverse citizenship. The defendants have moved for summary judgment and to dismiss the complaint on the ground that the plaintiffs have failed to establish a prima facie case of "serious injury" under Section 5102(d) of the New York Insurance Law. For the reasons set forth below, the motion of the defendants is granted, and the complaint is dismissed.

## FACTS

On August 30, 1989, an automobile owned by defendant United Newspaper Delivery Service and operated by one of its employees, defendant Walter Beckworth, collided with an automobile owned and operated by plaintiff Dina Filippini on the Verrazano Bridge in New York. After the accident, Ms. Filippini drove herself home in an automobile brought to the site of the accident by her husband, plaintiff Scott Milchman. Defendants' Memorandum of Law at page 1. Plaintiff Filippini did not return to work until November 2, 1989—approximately sixty days after the accident.

Two days after the accident, Ms. Filippini visited her obstetrician, Dr. Anthony Sgarlato (she was pregnant with her third child at the time of the accident). Dr. Sgarlato diagnosed plaintiff as having multiple trauma to her abdomen, groin, and lower torso. Letter of Dr. Sgarlato to plaintiffs' attorney, Anthony M. Kass, October 22, 1990. Dr. Sgarlato advised plaintiff to rest and to abstain from sexual activity. *Id.* Several weeks later, on September 27, 1989, Dr. Sgarlato diagnosed "right Inguinal ligamental tear", and he noted that "severe pain persisted." Ms. Filippini delivered her child in February of 1990 by elective caesarian section (as she had delivered her two previous children). The discharge summary signed by Dr. Sgarlato indicates that: "Patient was advised also . . . as to future pregnancies, one more may be envisioned." This discharge summary is dated March 3, 1990. However, a letter from Dr. Sgarlato to attorney Kass, dated October 22, 1990 indicates that: "She [plaintiff] and her husband have been advised that, due to the traumatic accident, scar tissue and severly [sic] relaxed uterine segment, future pregnancies should be avoided." Dr. Sgarlato has not submitted an affidavit with respect to this motion for summary judgment.[1]

Plaintiff filed this action in December of 1989; she alleged "a serious injury resulting in basic economic and noneconomic loss" and she demanded damages in the amount of $750,000.00. Complaint at ¶ 8 (first cause of action). Her husband claimed damages of $75,000.00 for lost services, society, and companionship of his wife as well as for medical expenses incurred on her behalf. Complaint at ¶ 11 (second cause of action). On September 19, 1990, plaintiffs served a response to defendants' interrogatories in which Ms. Filippini claimed to have sustained the following injuries: tear of the muscles in the abdominal wall; tear and stretching of the uterus; and possible complications and/or inability to bear children. Response to Interrogatories at ¶¶ 8—9. On June 27, 1990, the defendants took the deposition of Ms. Filippini. During the course of this testimony, defendants did not specifically ask her about any other injuries she may have sustained. She did, however, indicate that, at the time of the accident, she had cuts on her left hand. Deposition of Dina Filippini, at pp. 25—26.

Almost a full year after her deposition, plaintiff served an amended response to defendants' interrogatories on June 6, 1991. In that paper, she amended her answers to ¶¶ 8—9, and she alleged that her injuries were as follows: cervical sprain and strain; cervical radiculopathy with pain radiating down left arm; weakness to left hand and wrist; carpal tunnel syndrome involving the median and ulnar nerve; median nerve entrapment at the left wrist; exacerbation of scoliotic thoracic myelopathy; post-traumatic brachial plexopathy; tear of the muscles in the abdominal wall; tear and stretching of the uterus; possible complications and/or inability to bear children. Amended Response to Interrogatories at ¶¶ 8—9. In her affidavit submitted in opposition to this motion, plaintiff states that:

> I presently have pain radiating down my left arm with numbness of the arm and of all the fingers of my left hand, greatest in the fifth finger. My left hand is weak and clumsy. I am unable to open or close a jar and I tend to drop things

---

1. The affidavit of David J. Kilkenny, attorney for the defendants, contends that: "Magistrate Ross directed the plaintiff's attorney to provide an affidavit from Dr. Sgarlato by May 8, 1991. Plaintiff's counsel was unable to provide an affidavit from Dr. Sgarlato."

from my left hand. The pain is constant, and I have had this pain since my motor vehicle accident of August 30, 1989. There has been no improvement. In fact, the pain has become even more extreme and debilitating.

An affidavit of a certain Dr. Lawrence W. Shields supports the plaintiff's account of her injuries to her left arm and hand. He states that he "treated" plaintiff for her injuries; [2] that plaintiff complained to him of pain in her arm and of numbness in her hand; that plaintiff had two electromyogram ("EMG") tests at St. John's Episcopal Hospital on March 21, 1991 and on April 30, 1991 which "revealed electrical evidence of moderate to severe median nerve entrapment at the left wrist;" that plaintiff's "injuries include post-traumatic cervical myeloradiculopathy with left double crush syndrome (cervical radiculopathy and carpal tunnel syndrome) involving the median and probably the ulnar nerves ... [and] an exacerbation of scoliotic thoracic myelopathy and post traumatic brachial plexopathy;" that it "may be stated with a reasonable degree of medical certainty that the automobile accident ... was the competent producing cause of [plaintiff's] injuries;" that plaintiff has "sustained a permanent partial disability;" and, finally, that:

> Ms. Filippini has sustained a permanent loss of use of a body organ, member, function or system, to wit: her left arm and hand, as well as her median and ulnar nerves radiating down th [sic] left arm to left fingers; a permanent consequential limitation of use of a body organ or member, to wit: her left arm and hand; and significant limitation of use of a body function or system, to wit: her left arm and hand and nerves radiating down the left arm and hand."

Affidavit of Dr. Lawrence W. Shields at page 2.

In rebuttal, defendants contend that plaintiff Filippini has not suffered a "serious injury" within the meaning of New York State Insurance Law § 5102(d). They contend, *inter alia*, in their statement pursuant to Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York that she did not sustain a permanent loss of use of a body organ, etc.; that she did not sustain a permanent consequential limitation of use of a body organ, etc.; and that she did not sustain a significant limitation of use of a body function or system. Finally, defendants contend, in the affidavit of their attorney, that: "Dr. Shields' report is not credible as it relates to the accident in question." On these contentions, defendants move this court for summary judgment and for dismissal of the complaint.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, Rule 56(c) sets forth as clear prerequisites for summary judgment: (1) the absence of dispute as to any material fact; *and* (2) entitlement to judgment as a matter of law.

The Supreme Court has spoken clearly as to what constitutes a "genuine" issue of material fact: In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Court stated that a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." The Court there quoted its own opinion in *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–9, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), to the effect that "all that is required is that sufficient evidence

---

**2.** However, a letter of Dr. Shields to attorney Kass dated May 29, 1991, indicates that he "examined" plaintiff on April 10, 1991 and again on May 15, 1991. These dates of examination occurred well after plaintiff's deposition but only a few months before her service of amended response to defendants' interrogatories. Attorney Kass conceded at oral argument on this motion that Dr. Shields *examined* plaintiff but did not *treat* her.

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Thus, "if the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Nonetheless, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. Finally, insofar as granting a motion for summary judgment "deprives a party of its day in court and the right to present its cause to a jury, the district court in examining the record must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Companies, Inc.*, 892 F.2d 1128, 1132 (2d Cir. 1989).

The record compiled thus far by the parties would seem superficially to indicate that there is a "genuine" issue of fact to be resolved at trial. Ms. Filippini claims to have suffered "permanent loss of use of a body organ, member, function or system;" "permanent consequential limitation of use of a body organ or member;" and "significant limitation of use of a body function or system." *See* plaintiffs' Rule 3(g) statement. Defendants deny all of these contentions. *See* defendants' Rule 3(g) statement. Indeed, in that liability is not at issue in this motion, the crux of the dispute between the parties is the existence, nature, and severity of Ms. Filippini's injuries. Whether or not a plaintiff such as Ms. Filippini suffered particular injuries is, typically, a question of fact. Furthermore, it is often a question on which a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. To the extent that the defendants dispute the existence, nature, and severity of her injuries, they themselves might appear to present a genuine issue of fact for trial.

It also seems to be the contention of the defendants that the affidavits of Ms. Filippini and of Dr. Shields are not credible.

The affidavit of defendants' attorney, David J. Kilkenny, states: "Dr. Shields' report shows that he examined Ms. Filippini approximately one year and eight months after the date of plaintiff's accident. Dr. Shields' report is not credible as it relates to the accident in question." The affidavit also intimates that the allegations of the plaintiff cannot be believed insofar as she did not report injuries to her neck, arm, and hand until this litigation was well under way:

> Clearly Ms. Filippini's earlier testimony indicates that she did not sustain cervical sprain and strain; cervical radiculopathy with pain radiating down the plaintiff's left arm; weakness of the plaintiff's left hand and wrist and carpal tunnel syndrome which involves the median and ulnar nerves.

Affidavit of David J. Kilkenny. But in that defendants dispute the *credibility* of Dr. Shields and of plaintiff Filippini, the defendants themselves might appear to present a genuine issue of fact. As the Advisory Committee Notes on the 1963 amendment to Rule 56(e) state: "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Again, the credibility of these witnesses is a matter on which a reasonable jury might hold for the plaintiffs.

As a tentative matter, then, it superficially appears from the papers submitted by the parties with respect to this motion that there are genuine issues of fact to be resolved: first, the existence, nature, and severity of the alleged injuries of the plaintiff; second, and not unrelated, the credibility of the plaintiff and of her physician. Indeed, it is reasonably certain that the resolution of the first of these two disputes depends upon satisfactory resolution of the second.

■ However, the existence of a genuine issue of fact does not in itself defeat a motion for summary judgment; rather, the issue must be of a *material* fact. Fed. R.Civ.Proc. 56(c). As the Court said in

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510: "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." In other words, if the existence, nature, and severity of plaintiff's injuries are not *material* to her claim, then the dispute as to these matters between the parties will not foreclose defendants' motion for summary judgment. These questions must in fact "affect the outcome of the suit under the governing law" in order to rise to the level of materiality. Thus, under the rule of *Anderson,* it is not enough to conclude that there is a dispute as to plaintiff's injuries; it becomes necessary to inquire also whether those injuries are material. This, in turn, compels a consideration of the substantive law underlying plaintiff's cause of action.

An examination of New York Insurance law reveals that the existence and severity of plaintiff's injuries—to the extent they *are* questions of fact—are indeed material. Section 5104(a) provides, in relevant part:

Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of serious injury, or for basic economic loss.

Section 5102(j) defines "covered person" to include any operator of a motor vehicle with the "financial security required by article six or eight of the vehicle and traffic law...." That is, a "covered person" is one who has the insurance coverage required by the New York no-fault insurance regime.[3] "Basic economic loss" is defined by Section 5102(a) as, essentially, economic losses (such as medical expenses and loss of earnings) not in excess of $50,000 per person. Hence, any "economic loss" over

$50,000 per person is *not* "basic economic loss." Further, Section 5102(c) defines "non-economic loss" as "pain and suffering and similar non-monetary detriment."

■ Under the no-fault statutory terrain of New York Insurance Law, then, Section 5104(a) prohibits any person injured in an automobile accident from suing for "basic economic loss". Such an injured person is not prohibited, however, from suing for economic loss in excess of the *"basic* economic loss" ($50,000 per person). If Ms. Filippini were to sue for non-basic economic loss, then, Section 5104(a) would be no bar to her suit, and the severity of her injuries would be irrelevant.[4] However, Section 5104(a) also prohibits a person so injured from suing for non-economic loss "except in the case of serious injury." Because plaintiff seeks to sue for non-economic loss, see complaint at ¶ 7, she must have sustained a "serious injury". Hence, it is clear that the existence and severity of her injuries are matters which will "affect the outcome of the suit under the governing law": If she has a "serious injury", she may sue for non-economic loss; if she does not have such an injury, Section 5104(a) is a bar to her suit.

Section 5102(d) of the New York Insurance Law defines a "serious injury" as:

[A] personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately follow-

---

**3.** Although it is not clear from the record, it appears that both parties here are "covered persons" within the meaning of Section 5102(j). Neither party has suggested otherwise.

**4.** It appears from her complaint ¶ 7, however, that she does not seek to recover non-basic economic loss.

ing the occurrence of the injury or impairment.

Ms. Filippini, in her Rule 3(g) statement, claims to come within three of these "serious injury" categories.[5] Defendants, in their Rule 3(g) statement and in their memorandum of law, deny that the injuries that Ms. Filippini alleges come within the scope of any provisions of Section 5102(d). For this reason, they argue that the complaint should be dismissed.

New York law on the question of "serious injury" is, by the most charitable characterization, not a model of clarity. One proposition, however, is clear: The question of whether or not a particular plaintiff has sustained a serious injury is *not* always a question of fact for the jury. Rather, a complaint that alleges "serious injury" must be dismissed if the plaintiff fails to establish a prima facie case that he has met the statutory minimum of Section 5102(d). As the Court of Appeals stated in *Licari v. Elliott*, 57 N.Y.2d 230, 237, 455 N.Y.S.2d 570, 573–4, 441 N.E.2d 1088, 1091–4 (1982):

> [P]laintiff's argument that the question of whether he suffered a serious injury is always a fact question for the jury is without merit.... By enacting the No–Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents ... to the extent that plaintiffs ... no longer have an unfettered right to sue for injuries sustained. Thus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining a serious injury.

*See also Robbie v. Ledeoux,* 146 A.D.2d 764, 537 N.Y.S.2d 72, 73 (2d Dept.1989) ("It is for the court, in the first instance, to determine whether a plaintiff has established a prima facie case of sustaining serious injury.")

However, once a prima facie case is established, the determination of whether the plaintiff has indeed sustained a "serious injury" under Section 5102(d) is a question for the jury. *Harris v. St. Johnsbury Trucking Co. Inc.,* 57 A.D.2d 127, 393 N.Y.S.2d 611, 613 (3d Dept.1977) (after establishment of prima facie case of "serious injury", determination of whether plaintiff suffered "a permanent loss of use of a function or system ... should be submitted to the jury as a question requiring a special finding"). As the Court of Appeals stated in *Lopez v. Senatore,* 65 N.Y.2d 1017, 1020, 494 N.Y.S.2d 101, 102, 484 N.E.2d 130, 131 (1985):

> Where the treating physician, in an affidavit supported by exhibits, has set forth the injuries and course of treatment, identified a limitation of movement of the neck of only 10 degrees to the right or left, and on that predicate expressed the opinion that there was a significant limitation of use of a described body function or system, such evidence was sufficient for the denial of summary judgment to defendants. The medical reports and deposition testimony submitted by the defendants at best gave rise to questions of credibility, precluding summary judgment for plaintiff.

That is, a prima facie showing of serious injury will preclude the granting of summary judgment to the defendants and will give rise to a triable issue of material fact.

Although this court has found no case in which there was a claim of injuries identical to those alleged by the plaintiff here, allegations of injuries *similar* to those of Ms. Filippini have been held to establish a prima facie case and thus to raise a triable issue of material fact. *See, e.g., Liddy v. Frome,* 85 A.D.2d 716, 445 N.Y.S.2d 841, 842 (2d Dept.1981) (permanent injuries to plaintiff's neck; pain in right shoulder, forearm, and biceps; partial loss of use of right arm; and diminished rotation of head and neck found to present question for jury of "serious injury"); *Fernandez v. Vukosa,* 108 Misc.2d 48, 436 N.Y.S.2d 919, 920

---

5. These are: permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; and significant limitation of use of a body function or system.

(N.Y.Cty.1980) ("permanent partial limitation of motion in the area of the clavicle and right shoulder" constitutes "serious injury"; so too does "pain in the cervical area ... expected to be permanent"). Other cases, however, find no "serious injury" on similar facts. *See, e.g., Konco v. E.T.C. Leasing Corp.,* 160 A.D.2d 680, 553 N.Y.S.2d 457, 458 (2d Dept.1990) ("mild cervical sprain with some limitation of movement" not a "serious injury").

■ One case from the Appellate Division of the New York Supreme Court is very illuminating with respect to the motion of the defendants in this case. In *Morsellino v. Frankel,* 161 A.D.2d 748, 556 N.Y.S.2d 103 (2d Dept.1990), the defendants appealed from an order that denied their motion for summary judgment dismissing the complaint. In its per curiam memorandum, the court stated:

> Contrary to the defendants' contentions, the plaintiffs carried their burden of establishing a prima facie case of "serious injury" pursuant to Insurance Law § 5102(d) *(see, Licari v. Elliott,* 57 N.Y.S.2d 230, 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088; *cf., Lopez v. Senatore,* 65 N.Y.2d 1017, 494 N.Y.S.2d 101, 484 N.E.2d 130). In opposition to the defendants' motion for summary judgment, the injured plaintiff submitted her own affidavit, in which she complained of persistent pain, numbness and limitation of mobility, together with the medical reports of her treating orthopedic surgeon, who, after taking x-rays, discerned the existence of various injuries which he described, with a reasonable degree of medical certainty, as "permanent" in nature. While the defendants submitted a physician's report which concluded otherwise, the discrepancies in the reports "involve issues of credibility which are for a jury to determine" *(see, Francis v. Basic Metal,* 144 A.D.2d 634, 635, 534 N.Y.S.2d 697).

556 N.Y.S.2d at 104. The facts of *Morsellino* are close to the facts here: Ms. Filippini has submitted an affidavit describing her constant pain, numbness, and limited use of her left hand; and she has produced an affidavit from Dr. Shields who contends that his diagnosis is predicated in part on the objective results of two EMG tests conducted at St. John's Episcopal Hospital. He further describes, with a modicum of detail, the injuries he has discerned in the plaintiff, and he concludes that they are permanent. However, unlike the physician in *Morsellino*—and unlike the physician in *Lopez, supra*—Dr. Shields is *not* Ms. Filippini's "treating physician." He merely "examined" Ms. Filippini twice.[6] Further, there is no indication in the record what medical specialty, if any, Dr. Shields is competent to practice, and he sets forth in his affidavit no meaningful diagnostic information other than conclusions that track the language of Section 5102(d).[7]

The distinction between a treating physician and an examining physician is not insignificant. Courts have recognized in other contexts that medical evidence supplied by a treating physician should be granted much more careful consideration than that given by an examining physician. *See, e.g., Bluvband v. Heckler,* 730 F.2d 886, 893-4 (2d Cir.1984) (in disability appeal, report of treating physician is much more significant than that of examining physician); *Smith v. Sullivan,* 776 F.Supp. 107 (E.D.N.Y.1991) (in disability appeal, "the opinions of 'examining physicians' are entitled to very little weight"). This greater reliance on evidence from a treating physician is not misplaced: A doctor who establishes a relationship with a patient over time—who diagnoses that patient's maladies and who prescribes and supervises a course of treatment—has a much greater familiarity with the patient's physical status than does a physician who examines the patient once or twice. The former simply

---

**6.** Indeed, both examinations occurred over eighteen months after the accident but only a few months before Ms. Filippini amended her answers to defendants' interrogatories in order to allege additional injuries.

**7.** For example, Dr. Shields, at page 2 of his affidavit, states that: "Ms. Filippini has sustained a permanent loss of use of a body organ, member, function or system, to wit: her left arm and hand...."

has a richer source of data from which to draw scientific inferences and conclusions; thus, the report of a treating physician is inherently more reliable than that of an examining physician. For this reason, it cannot be said that the affidavit of Dr. Shields should be given the same weight as were the reports of the treating physicians in *Lopez* and in *Morsellino.*

Although "the judge's function [on a motion for summary judgment] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, and although *Gibson, supra,* requires that this court "resolve all ambiguities and draw all reasonable inferences in favor" of Ms. Filippini, 892 F.2d at 1132, the evidence offered by Ms. Filippini must nonetheless be more than "merely colorable." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Yet the conclusory statements that constitute Dr. Shields' affidavit present nothing beyond the merely colorable: His affidavit suggests greater familiarity with the content of Ms. Filippini's affidavit and with the content of Section 5102(d) than with the physical phenomena of Ms. Filippini's alleged injuries. Further, it is not simply the conclusory phraseology of Dr. Shields' affidavit that makes this evidence wholly unreasonable: Ms. Filippini told no physician of her neurological injuries—injuries that she alleges have caused her "constant" pain since the accident—until over eighteen months after the accident. It was at that time that her treating physician failed to provide an affidavit concerning the alleged injuries to her abdomen; and it was shortly after that time that she amended her answers to the defendants' interrogatories to allege—for the first time—severe injuries to the nerves in her left arm and hand. Under these circumstances, and in consideration of the conclusory language of Dr. Shields' affidavit—language carefully chosen to conform to Section 5102(d)—it would be unreasonable to conclude other than that Ms. Filippini has failed to set forth any evidence, other than that which is "merely color-

able", of a "serious injury". She has, in short, failed to establish a prima facie case of "serious injury".

## CONCLUSION

Because Ms. Filippini has failed to establish the *Licari* requirement of a prima facie case of a "serious injury" under Section 5102(d), dismissal of her complaint is appropriate. Her allegations of serious injury do not raise genuine issues of material facts and therefore should not be submitted to a jury.

SO ORDERED.