Stephen **MORRISSEY** and Donna Morrissey, **Plaintiff,**

v.

The **CITY OF NEW YORK,** New York County District Attorneys Office, Robert M. Morgenthau in his official capacity as District Attorney of New York County, William Burmeister, in his official capacity as Assistant District Attorney, The New York City Police Department, William I. Bratton, in his official capacity as Commissioner of the New York City Police Department, Walter J. Mack, in his official position as Chief of the Internal Affairs Bureau of the New York City Police Department, Jorge Alvarez, individually and in his official capacity as a police officer of the New York City Police Department, Defendants.

No. 95 Civ. 1374(CBM).

United States District Court, S.D. New York.

May 2, 1997.

Dona B. Morris, Paul A. Crotty, Corp. Counsel of the City of N.Y., New York City, for New York City, New York City Police Dept., William J. Bratton, Walter J. Mack.

Marc Frazier Scholl, N.Y. County Dist. Atty's Office, New York City, for N.Y. County Dist. Atty's Office.

## OPINION

MOTLEY, District Judge.

Defendants have moved for summary judgment on plaintiffs' only federal claim in this action, a violation of 42 U.S.C. § 1983. Because the court agrees with defendants that there is no genuine issue of material fact as to defendants' use of a "custom or policy" that caused the alleged deprivation of plaintiffs' Fourth Amendment rights, this motion is granted.

## BACKGROUND

Plaintiff Stephen Morrissey is a police officer who was in the New York Police Department's ("NYPD") 30th precinct during the investigation into its corrupt practices. During these investigations, defendant New York District Attorney's Office ("District Attorney") in conjunction with the Internal Affairs Bureau ("IAB") of defendant NYPD, would identify members of the police force who had been guilty of wrongdoing, arrest them and offer them what was known as a "cooperation agreement." Under the terms of the agreement, the officers would aid in the prosecution of other members of the NYPD by agreeing to become "cooperators," in return for which they would have their ultimate punishments reduced. As cooperators, the officers were required to wear tape recording devices and gather evidence of wrongdoing by other members of the precinct. In addition, the cooperators were expected to testify against officers against whom they had gathered information.

Defendant Jorge Alvarez, who has had a default judgment rendered against him in this case,[1] was a police officer in the 30th

Michael F. Fitzgerald, New York City, for Stephen Morrissey.

1. By order dated January 30, 1996, this court granted plaintiff judgment by default as against defendant Alvarez because he had failed to appear in this action. Defendant Alvarez later wrote to the court, requesting that the default judgment be vacated because he had been under the impression that defendant City of New York was going to represent him. Upon the consent of all parties, the default judgment was vacated by order dated November 13, 1996. However, defendant Alvarez did not appear after the lifting of the default judgment. As a result, upon request of plaintiff, the default judgment was reinstated against defendant Alvarez on January 2, 1997. Thus, defendant Alvarez is not a party to the instant dispute and, unless otherwise stated, any reference to "defendants" herein refers to all defendants except him.

precinct who had been under investigation for corruption, but who, at some point in 1993, became a cooperator. On February 27, 1994, while at the police station, defendant Alvarez shot plaintiff in the left foot after a scuffle between plaintiff and defendant Alvarez during which plaintiff had referred to defendant Alvarez as a "rat," allegedly a term of derision referring to defendant Alvarez' position as a cooperator.

Plaintiff alleges that defendant Alvarez deprived him of his Fourth and Fifth Amendment rights in violation of 42 U.S.C. § 1983 by shooting him. Plaintiff also claims that defendants City of New York, NYPD, the District Attorney, and the individuals in charge of these agencies, acting in their official capacities, have exhibited deliberate indifference to the rights of persons like plaintiff by engaging in a policy of inadequately training and supervising cooperators from the 30th precinct. Plaintiff claims that these individuals were put under a great deal of stress by cooperating with the LAB and informing on their fellow police officers and that defendants recognized the existence of such stress and yet failed to train and supervise the cooperators properly. Plaintiff also raises a litany of state law claims and seeks $1,000,000 in compensatory damages, $1,000,-000 in punitive damages, and attorney's fees.

On February 4, 1997, defendants District Attorney, Robert Morgenthau, and William Burmeister moved to dismiss the case as against them and also moved for summary judgment on plaintiffs' § 1983 claim. The balance of the defendants later joined in the motion for summary judgment. These defendants had also previously filed a motion to amend the caption, several motions in limine, and a motion to dismiss the case against the NYPD because it is a not a suable entity. Because the court grants the motion for summary judgment and thereby dismisses the case, none of the many other motions fully pending before the court are addressed.

## DISCUSSION

### I. Summary Judgment Generally

"Uncertainty as to the true state of any material fact defeats [a summary judgment] motion." *Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989). It is not the role of the trial court to weigh the evidence presented or to resolve any factual issue, but rather it is the court's job to determine whether, after the parties have conducted adequate discovery, any such issues remain to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A factual issue is unresolved if a reasonable factfinder could determine it in favor of either party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *Gibson,* 892 F.2d at 1132. Moreover, [t]he court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The non-moving party may defeat the motion for summary judgment by producing sufficient facts to establish a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The non-moving party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided [in F.R.C.P. 56], must set forth sufficient facts showing that there is a genuine issue for trial." FED. R. Civ. P. 56(e); *accord Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 n. 20, 90 S.Ct. 1598, 1609 n. 20, 26 L.Ed.2d 142 (1970) (indicating that the last two sentences of Rule 56(e) were added to prevent a party from relying solely upon its pleading in resisting a motion for summary judgment).

Defendants have moved for summary judgment on several grounds: (1) that defendant Alvarez was not acting under color of state law, (2) that the shooting of plaintiff by defendant Alvarez was accidental and therefore there could be no recovery under § 1983 pursuant to the Second Circuit's holding in *Dodd v. City of Norwich,* 827 F.2d 1, 7–8 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988), and (3) that plaintiffs have failed to raise a genuine issue of material fact as to defendants' employ-

ment of a policy or custom of inadequately training and supervising cooperating police officers. The court addresses only the final issue, because it is quite clear that summary judgment should be granted on this basis alone.

## II. Municipal Liability under 42 U.S.C. § 1983

42 U.S.C. § 1983 (West 1996) reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State .... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has made clear that, although a municipality does qualify as a "person" for purposes of § 1983 liability, actions arising under § 1983 cannot be brought against a municipality on the basis of the actions of one of its agents simply on the theory of *respondeat superior. Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). According to *Monell,* a governmental body can only be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury ..." *Id.* at 694, 98 S.Ct. at 2037–38. (holding that a municipality which requires pregnant women to take unpaid sick leave can be subject to § 1983 liability).

However, while it is true that a municipal custom or policy must be shown, this does not mean that a municipal policy may not be inferred from the actions of nonpolicy making officials. Litigants frequently argue that a municipality has a custom or policy of inadequately failing to train or supervise its lower level employees, and that it is this policy which has "caused" their injury.

The Supreme Court has held that failure to train or supervise claims of this sort may serve as the basis for § 1983 liability, but only when plaintiff can demonstrate both the requisite culpability as well as causation. *Board of the County Commissioners of Bryan County v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997).

### A. Culpability

Inasmuch as culpability is concerned, the failure to train or supervise must amount to nothing less than a "deliberate indifference" to the rights of citizens before liability can be imposed. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989). Moreover "deliberate indifference" constitutes more than "simple or even heightened negligence." *Brown,* —— U.S. at ——, 117 S.Ct. at 1390. Rather, it involves a "conscious disregard" on the part of municipal employees for the consequences of their actions. *Id.* at ——, 117 S.Ct. at 1390.

" 'Deliberate indifference' in failure to train or supervise claims is generally proved through the existence of a municipal program, necessarily intended to apply over time to multiple employees." *Id.* If such a program results in frequent constitutional violations by lower level employees, the municipality may be put on notice that a new program is needed, and failure to implement such a new program "may establish ... the 'deliberate indifference' necessary to trigger municipal liability." *Id.; see also City of Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10 ("It could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to city policymakers, who, nevertheless, are deliberately indifferent to the need".) The Court has left open the possibility that municipal liability could conceivably be proved through a single deprivation of federal rights, but has limited potential liability in such cases to the "narrow set of circumstances" where "a violation of federal rights" was "a *highly predictable* consequence of a failure to equip law enforcement personnel with specific tools to handle recurring situations."

*Brown,* ——— U.S. at ———, 117 S.Ct. at 1391 (emphasis supplied).

In *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992), the Second Circuit created a three prong test to determine whether or not a municipality's failure to train or supervise constitutes "deliberate indifference." *Id.* at 297. First, the plaintiff must show that municipal policymakers know "to a moral certainty" that their employees will confront a given situation. *Id.* Secondly, the situation with which the employee is presented must be a difficult one that training or supervision may make less difficult or, alternatively, there is a history of employees mishandling the situation. *Id.* Thus, for example, training police officers in how to apprehend a fleeing felon would be a "difficult choice" since an officer would not know how to conduct himself in a constitutional manner without proper training. *Id.* On the other hand, a municipality does not need to train officers not to commit perjury in court[2], since it is obvious to anyone that perjury is not the type of activity in which officers of the law should be engaged. *Id.* at 299–300. Finally, a municipality cannot be found to show "deliberate indifference" to the rights of citizens unless the failure of an employee to make the proper choice in the situation alluded to above will frequently result in the deprivation of constitutional rights. *Id.* at 298.

### B. Causation

Of course, as both the text of § 1983 as well as Supreme Court precedent make clear, even if a party can successfully demonstrate that a municipality has a custom or policy of inadequate training or supervision, it still must show that this inadequate training or supervision "caused" plaintiffs' injury. If the connection between the alleged injury and the failure to train or supervise is tenuous or non-existent, no liability will attach. 42 U.S.C. § 1983 (West 1996); *City of Canton,* 489 U.S. at 391, 109 S.Ct. at 1206 ("[F]or liability to attach ... the identified deficiency

in a city's training program must be closely related to the ultimate injury.... [R]espondent must prove that the deficiency in training actually caused the [injury].... To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.") *See also Brown,* ——— U.S. at ———, 117 S.Ct. at 1387–88 ("The plaintiff [in a § 1983 action] must ... demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must ... demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") Thus, in *Brown,* the Court held that the mere failure of a municipal policymaker to adequately screen the record of a police officer when hiring him would not subject a municipality to liability under § 1983 unless the officer's subsequent deprivation of the constitutional rights of another person "was a plainly obvious consequence of the hiring decision." *Id.* at ———, 117 S.Ct. at 1391.

### III. Plaintiff's Failure to Raise a Genuine Issue of Material Fact

Plaintiff has failed to survive summary judgment on his claim of failure to train or supervise because (1) he has no evidence which demonstrates that the municipality exhibited a "deliberate indifference" to the constitutional rights of plaintiff and others like him, and (2) there is no causal link between plaintiffs' injury and any alleged deficiency in the municipality's training or supervision program.

### A. Failure to Present Evidence of "Deliberate Indifference"

██ In this case, plaintiffs' injury resulted from the action of a single, nonpolicymaking officer, defendant Jorge Alvarez. Moreover, he has failed to introduce evidence of wrongdoing by other cooperators that could have been prevented by adequate training and

---

**2.** Of course, if there is a history of police officers committing perjury, the municipality may then be required to train officers not to engage in this type of activity, since the *Walker* test requires a choice that is either difficult or frequently mis-

handled. *Id.* at 300. In the absence of evidence of mishandling, however, a municipality does not need to train officers to make choices which should be obvious to them.

supervision.[3] Thus, under Brow, he can only recover if he can show that the possibility that a cooperator would deprive a person like plaintiff of his constitutional rights was so "highly predictable" that it reflected a conscious disregard on the part of the municipality to this deprivation. *Brown,* —— U.S. at ——, 117 S.Ct. at 1391.

While there is certainly a genuine issue of material fact as to whether a failure to supervise cooperators *could* conceivably lead to a deprivation similar to that which plaintiff allegedly suffered, it is clear that such a deprivation is not "highly predictable." There can be little doubt that cooperators are under some stress, but it cannot be said that such stress is in any way closely linked to the arbitrary shooting of other individuals. This is particularly so where defendants already had a policy of not permitting officers known for violent behavior to become cooperators (Melendez Aff ¶ 6).

Moreover, plaintiff is unable to meet all of the requirements necessary to establish municipal liability under *Walker.* Even assuming that plaintiff is able to meet the first requirement that a policymaker knows "to a moral certainty" that her employees will confront a given situation, *Walker,* 974 F.2d at 297, plaintiffs have failed to create a genuine issue of material fact with regard to the requirement that the employees be faced with a difficult choice made easier by adequate supervision and training.

Inasmuch as the failure to train is concerned, plaintiffs' position is entirely incoherent. Plaintiff has not argued that defendant Alvarez was poorly trained as a police officer, but that he was poorly trained as a cooperator. Thus, plaintiff is suggesting that defendants should have told defendant Alvarez that he might encounter stress in connection with his role as a cooperator and that he should not attempt to release his stress by shooting fellow officers. This is quite clearly not a choice for which defendant Alvarez needed to be trained because it is not a "difficult" one as defined by the Second Circuit. *See id.* at 297. It is perfectly obvious to anyone that shooting people to relieve stress is not a proper course of action.

Of course, the same cannot be said of a failure to supervise claim. While training an officer not to shoot other officers may not be particularly useful, supervising him while he is in a situation generally acknowledged as stressful could prevent him from making choices which might deprive others of their constitutional rights.

However, in this case, as was mentioned above, there is a great deal of evidence that such supervision was undertaken. Defendants have shown that potential informants with "propensities for violence" were rejected by the Task Force responsible for the investigation of corruption in the 30th Precinct (Melendez Aff. ¶ 6). They have also shown that those responsible for handling the cooperating officers were instructed that, because the cooperators were under some level of stress, they should monitor them closely and report any signs of stress (Belfiore Dep. pp. 143–44).

Plaintiff has proffered nothing other than conclusory allegations to rebut these claims. He has offered no evidence of any kind which establishes a pervasive failure of the police department to supervise cooperators generally, relying instead on the simple allegation that the supervision was "inadequate." Plaintiff does not even provide the court with any indication of what he would expect proper supervision to be, nor does he state exactly what "choice" municipal policymakers made in their supervision of cooperators that induced the cooperators to take actions which deprived others of their constitutional rights. *See City of Canton,* 489 U.S. at 389, 109 S.Ct.

---

3. Defendants assert that no such evidence exists and have introduced an affidavit by a former Captain of the IAB indicating as much (Belfiore Aff. ¶¶ 13–24). Though he promises to mention other incidents of cooperator misconduct at trial (Pa. Mem. at p. 11, n. 5), plaintiff has not yet presented the court with any proof that such incidents occurred. As was made clear in Sec. I *supra,* plaintiff cannot simply rest on unfounded allegations and promise to do more at trial; he must set forth in opposition to defendants' motion for summary judgment specific facts rebutting defendants' claims. Because he has failed to do this, the court is compelled to conclude that there are no other examples of misconduct by cooperators which are attributable to a policy of inadequate training and supervision.

at 1205 ("Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from various alternatives by city policymakers."); *Ferreira v. Westchester County,* 917 F.Supp. 209, 216 (S.D.N.Y.1996) ("[P]laintiffs must do more than show the need for training on this issue; they must show how a particular policymaker's specific choice with respect to the training deficiency at issue reflects deliberate indifference to their constitutional right....") Thus, in light of defendant's submissions, more than unfounded allegations must be put forward to establish that the supervision was inadequate and that further supervision would have prevented cooperators from making difficult choices that would deprive persons like plaintiff of constitutional rights.

**B. Causation**

■ Secondly, even if it could be argued that there was a pervasive failure on the part of defendants to train or supervise cooperators adequately, plaintiff has failed to show how this failure "caused" his injury. Plaintiff himself admits that defendant Alvarez did not display any overt signs of stress (Morrissey Dep. pp. 206–12), and, despite plaintiffs' unfounded allegations to the contrary, it appears as if defendant Alvarez was not known in the police force for violent behavior. Prior to his involvement in the corruption which pervaded the 30th Precinct, when he started to steal money and narcotics, defendant Alvarez had only been disciplined once, for failing to respond properly in connection with an abandoned car he had seen while on patrol (Alvarez Dep. pp. 13, 14–19). While the offenses regarding the stealing of narcotics hardly make defendant Alvarez a model citizen, they do not indicate that he possesses a penchant for violence.

Moreover, after defendant Alvarez' wife reported that he was under some stress, two investigators went to speak with him personally to determine whether or not he was fit to continue as a cooperator (Belfiore Dep. p. 144). They determined that he was, and, until the shooting, defendant Alvarez exhibited no other symptoms of abnormal behavior (Belfiore Dep. 14546). Clearly more than

this would need to be shown before it could be said that defendants alleged inadequate supervision of plaintiff was the "moving force" behind the alleged constitutional violation ultimately inflicted. *See Brown,* —— U.S. at ——, 117 S.Ct. at 1388–89.

In short, even if the court were to assume that there was a pervasive failure by defendants to train and supervise their officers properly, no liability could attach to their conduct in this instance because even an extraordinary amount of supervision could not have prevented the shooting of plaintiff.

**CONCLUSION**

For the reasons provided above, the court grants defendant summary judgment on plaintiffs' claim arising under 42 U.S.C. § 1983. Furthermore, the court declines the exercise of jurisdiction over the state law claims and dismisses those claims from this forum.